UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| Polanco v. Roth ) | |
| ) | Bankruptcy Case No.: 11-34121-MER |
| ) | Chapter 7 |
| ) | Adversary No.: 12-01010-MER |
| Tasheena Polanco ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| Joseph A. Roth ) | |
| Defendant ) | |

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Joseph A. Roth, submits the following reply regarding summary judgment.

## BACKGROUND

On August 23, 2012, Defendant filed his motion for summary judgment and supporting affidavit. In his affidavit, Mr. Roth unequivocally stated, among other things, the following:

1. That prior to the employment of Ms. Polanco, he had never met Ms. Polanco (i.e, they never had a personal relationship); *See* Exh. A, Affidavit of Joseph A. Roth, ¶ 8.

2. That prior to and during the course of Ms. Polanco's employment, he did not have any dislike of or animus toward Ms. Polanco. *Id.* ¶ 9.

3. That his words and conduct were not intended to injure Ms. Polanco. In other words, Mr. Roth did not have an actual intent to injure Ms. Polanco under any circumstances. *Id.* ¶ 10.

4. That he did not desire to injure or harm Ms. Polanco nor did he believe that any injury to Ms. Polanco was substantially certain to result from his acts or comments. *Id*, ¶ 11.

These critical factors establish that any purported injury suffered by Ms. Polanco were not willful or malicious within the meaning of 11 U.S.C. § 523(a)(6) ("[a] discharge under...this title...does not discharge an individual debtor from any debt for *willful* and *malicious* injury by the debtor to another entity or to the property of another entity.")(emphasis added). *See, e.g., Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998)("The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.")

In response to the motion for summary judgment, Plaintiff sets forth a series of deliberate or intentional acts which resulted to her purported emotional distress. However, as demonstrated below, Plaintiff's litany of intentional acts does not amount to a material fact dispute regarding Defendant's lack of intent or desire to injure Plaintiff.

## ARGUMENT

I. Plaintiff Ignores The Subjective Standard.

As to whether intent is measured on an objective or subjective basis, the Tenth Circuit, following *Geiger*, has adopted the subjective standard. *See, e.g., Via Christi Reg'l Med. Ctr. v. Englehart,* 2000 U.S. App. LEXIS 22754 (10th Cir. 2008) ("In sum, the "willful and malicious injury" exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur. When

injury was "neither desired nor in fact anticipated by the debtor," it is outside the scope of the statute. *Geiger*, 523 U.S. at 62"); *see also Panalis v. Moore* (*In re* Moore), 357 F.3d 1125, 1129-30 (10th Cir. 2004).

In *Englehart*, the Tenth Circuit emphasized subjective standard, stating:

> The Eighth Circuit decision affirmed by the Supreme Court in *Geiger* relied on the Restatement (Second) of Torts § 8A (1965) to hold that the intent element of § 523(a)(6) requires that the debtor either "*desires* to cause [injury], or . . . *believes* that the [injury is] substantially certain to result." *Geiger*, 113 F.3d at 852 (quotation omitted and emphasis added). As the emphasized terms reflect, the Eighth Circuit adopted the Restatement's dual approach to intent in toto, i.e., while extending the concept to include undesired yet substantially certain injury, the court kept the focus of the inquiry subjective--on *the debtor's* belief in the substantial certainty of injury, **not on a fact finder's independent view of the likelihood of injury**. Indeed, the court took pains to explain the point, which was crucial to its holding in the case:
> In our case, there is no suggestion whatever that [the debtor] desired to cause the very serious consequences that [the creditor] suffered. . . . Therefore, he would have to have believed that [the creditor] was substantially certain to suffer harm as a result of his actions. **Although the district court opined that "expert testimony" established that [the debtor's] conduct was "certain or substantially certain to cause [injury]," that is not enough**. There is nothing in the record, so far as we can tell, that would support a finding that [the debtor] believed that it was substantially certain that [the creditor] would suffer harm. **Indeed, [the debtor] testified that he believed [to the contrary]** . . . .
>
> This is an important distinction, one in fact that defines the boundary between intentional and unintentional torts: Even if [the debtor] should have believed that his [conduct] was substantially certain to produce serious harmful consequences, he would be guilty only of [negligence or recklessness], not of an intentional tort.
> *Id.* at 852-53.

(bold face emphasis added).

Here, Plaintiff is relying on a fact finders's independent view of the likelihood of injury rather than Defendant's belief (or lack thereof) in the substantial certainty of injury. Further, expert testimony as to whether Defendant's conduct was certain or substantially certain to cause injury would be insufficient to create a material fact dispute as to whether Defendant intended or

3

desired to cause Plaintiff any harm. Finally, Plaintiff's mere recitation of Defendant's actions and comments cannot overcome Defendant's unequivocal declaration that he did not intend or desire to injure Plaintiff and that he did not believe that any injury to Plaintiff was substantially certain to result from his acts or comments. Rather than offering any specific evidence as to Defendant's intent, Plaintiff merely claims that Defendant's affidavit is "entirely self serving." However, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Productions Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

II. Plaintiff's Battery Claim Is Insufficient to Support Nondischargeability.

In an attempt to augment her position, Plaintiff states: "Mr. Roth actually *physically touched* Ms. Polanco in a sexual manner on two occasions, including touching her breast and her crotch.[1] Ms. Polanco has asserted a claim for battery against Mr. Roth based on these alleged incidents of unwelcome physical contact."[2] *See* Plaintiff's Response at 9 (emphasis original). However, the single battery case cited by Plaintiff is distinguishable from these isolated, alleged touching incidents. *See* Plaintiff's Response at 7 citing *Musich v. Graham (In re Graham)* 455 B.R. 227 (Bankr. D. Colo. 2011). In *Graham,* the debtor punched Musich in the face fracturing several facial bones. The debtor, Graham, admitted that he purposefully hit Musich hard enough to fracture the bones in Musich's face. 455 B.R. at 232. In light of this admission, the Court stated: "Here, the injury to Plaintiff was "willful" under § 523(a)(6) because it was *intentional*. The pleadings, testimony, and affidavits demonstrate Defendant *intentionally* struck Plaintiff

---

[1] Mr. Roth denies that he touched Plaintiff's crotch. *See* Dep. of Joseph Roth at 84, lines 7-15 (the deposition is attached to Plaintiff's Response). Furthermore, Mr. Roth stated that if he touched Plaintiff's breast, such touching was accidental. *Id.* at 83, lines 7-17.
[2] *Quinn v. Greentree Credit Corporation,* 159 F.3d 759, 768 (2d Cir. 1998) (comments regarding female employee's posterior and deliberate touching of her breasts, were sufficiently isolated and discrete to find that the employer's conduct, although offensive, did not create a hostile work environment).

hard enough to fracture Plaintiff's facial bones. The evidence shows Defendant *intended* to cause injury to Plaintiff—or at the very least that his actions were *substantially certain* to result in injury." *Id.* (emphasis original). Here, there was no physical injury and no intent to cause any injury whatsoever. It should be noted that in Colorado, civil battery does not require an intent to injure. *See. e.g., Stover v. Vukelich (In re Vukelich),* 2012 Bankr. LEXIS 3864 (Bankr. D. Colo. 2012)("In Colorado, to prove a claim for battery...[t]he plaintiff need not prove, however, that the actor intended the harm that actually results.") Moreover, the vast majority of intentional assault and battery cases under § 523(a)(6) involve obvious and serious physical injuries *See, e.g., In re Thirtyacre,* 36 F.3d 697 (7th Cir. 1994)(where debtor intentionally struck victim in the neck, absent legal justification or excuse, act was malicious and resulting debt was nondischargeable); *In re LeMaire,* 898 F.2d 1346 (8th Cir. 1990)(where debtor shot plaintiff five times at close range with a rifle in an attempt to kill the plaintiff, resulting debt would be nondischargeable in Chapter 7, and debtor's Chapter 13 plan, which proposed to pay 42% of debt was not proposed in good faith); *In re Pitner,* 696 F.2d 447 (6th Cir. 1982)(debt resulting to widow when debtor shot victim in the stomach, a wound from which the victim later died, was nondischargeable); *In re Dardar,* 620 F.2d 39 (5th Cir. 1980)(absent legal justification or excuse, intentional beating of victim by debtor was malicious and resulting debt was nondischargeable); *In re Vickers,* 546 F.2d 1149 (5th Cir. 1977)(absent legal justification or excuse, intentional stabbing of victim by debtor was malicious and resulting debt was nondischargeable); *In re Seals,* 110 Bankr. 331 (M.D. Tenn. 1989)(where debtor choked, kicked, beat, kneed and threw the plaintiff around her own apartment, debt based on injuries thereby received by the plaintiff was nondischargeable); *In re Gaebler,* 88 Bankr. 62 (E.D. Pa. 1988)(debt resulting from intentional shooting of victim by debtor without legal cause or excuse was nondischargeable); *In*

*re Chase,* 43 Bankr. 739 (D. Md. 1984)(where debtor sexually abused minor, resulting debt was nondischargeable in Chapter 7.[3]

In short, the § 523(a)(6) line of battery cases demonstrate that the respective debtors were aware that their respective actions would cause physical injury, i.e., they intended to injure or believed that injury was substantially certain to result from their respective acts. Here, in stark contrast, there was no physical injury and no way for Mr. Roth to anticipate or believe that his acts or comments would cause Ms. Polanco the severe depression which she alleges.[4]

### III. Plaintiff's Sexual Harassment Cases Are Distinguishable.

In support of her assertion that sexual harassment cases are nondischargeable, Plaintiff cites two cases which are factually and procedurally distinguishable. *See* Plaintiff's Response at 8, citing *McDonough v. Smith (In re Smith),* 270 B.R. 544 (Bankr. D. Mass. 2001*); Basile v. Spagnola (In re Spagnola),* 473 B.R 518 (Bankr. S.D.N.Y. 2012). In both *Smith* and *Spagnola,* the employer conditioned employment on having sex with the employer. *Spagnola,* 473 B.R. at 518 ("offering her job security in return for sex"); *Smith* 270 B.R at 549 ("submitting to his sexual demands as a condition of preserving her employment"). Cases involving employer

---

[3] *See also In re Perretti,* 172 Bankr. 214 (Bankr. N.D. Ohio 1994) (debt resulting when debtor struck plaintiff in the face was nondischargeable, where evidence did not support debtor's claims of self defense and "mutual combat"); *In re Hazard,* 166 Bankr. 145 (Bankr. E.D. Mo. 1994) (debt resulting when debtor intentionally assaulted the plaintiff was nondischargeable); *In re Bumann,* 147 Bankr. 44 (Bankr. D.N.D. 1992) (debt resulting when debtor instigated fight with plaintiff and struck plaintiff in the face was nondischargeable, even though plaintiff fought back and struggled with debtor after fight began); *In re Pokorny,* 143 Bankr. 179 (Bankr. N.D. Ill. 1992) (where debtor intentionally struck the plaintiff in the face with his fists, the resulting debt was nondischargeable, even if debtor was incited by ethnic slurs, since mere verbal abuse is not legal justification for assault); *In re McCown,* 129 Bankr. 432 (Bankr. D. Md. 1991)(debt resulting when debtor police officer shot minor suspect three times was nondischargeable, where minor suspect was unarmed and the circumstances did not warrant a reasonable belief by the officer that he was in imminent danger from the minor); *In re Camden,* 115 Bankr. 156 (Bankr. S.D. Ill. 1990) (debt resulting when debtor intentionally shot her former boyfriend in the stomach was nondischargeable); *In re Tuma,* 111 Bankr. 323 (Bankr. D. Mont. 1990)(debt resulting when the debtor struck the plaintiff in the mouth with his fist, was nondischargeable, where debtor had not acted in self defense).

[4] In her affidavit, Ms. Polanco noted that during her job interview, Mr. Roth stated that he liked her boobs. *See* Affidavit of Tasheena Polanco , ¶ 8 (the affidavit is attached to Plaintiff's Response). However, she did not object to this comment or refuse employment. This apparent acquiescence to sexual banter indicated that she was not bothered or emotionally vulnerable to such comments.

6

demands for sexual favors from an employee in return for a tangible job benefit, or threats to retaliate against the employee if the employee denied some sexual liberties are often referred to as *quid pro quo* cases. In such cases, the explicit demands that result in the change in the terms and conditions of employment are actionable discrimination under Title VII. *See Harris v. Forklift Systems,* Inc., 510 U.S. 17 (1993).

None of the evidence produced in this Adversary Proceeding indicates that Mr. Roth's conduct amounted to *quid pro quo* discrimination. Plaintiff never claimed that there had been a sexual assault, a request for sexual favors, or a threat made and carried out when sexual favors or liberties were requested by Mr. Roth and subsequently denied by her. The lack of a *quid quo pro* element is indicative of Mr. Roth's lack of any intent or desire to harm Ms. Polanco. Furthermore, in *Smith* the parties were involved in a three year consensual relationship before the plaintiff ended the relationship. As a result, the employer was emotionally disturbed and used his job authority as a tool to restore the relationship. *Smith,* 270 B.R. at 550. Here, in contrast, there was never a personal relationship between Mr. Roth and Ms. Polanco. The lack of any close personal ties is emphasized by the fact that Ms. Polanco was only employed for one month (May12-June 8, 2009). [5]

Procedurally, *Smith* and *Spagnola* were decided on collateral estoppel grounds. *Smith,* 270 B.R. at 547-48; *Spagnola,* 473 B.R. at 522. In both cases, the respective plaintiffs obtained monetary judgments, including punitive damages, after a jury trial. In each case, the judgments were affirmed on appeal. Thus, after Smith and Spagnola filed their respective bankruptcy cases, the bankruptcy courts were required to reach nondischargeability conclusions under § 523(a)(6) on the basis of claim preclusion or collateral estoppel. The respective bankruptcy courts were

---

[5] Plaintiff's assertion that "Mr. Roth subjected Ms. Polanco to egregious sexual harassment nearly everyday at work" is a bald exaggeration and not supported in the record. *See* Plaintiff's Response at 9.

7

procedurally compelled to adhere to the fact findings reflected in the underlying jury verdicts and appellate affirmations. Here, the Court is not faced with a collateral estoppel analysis, i.e., the acceptance of the resolution of material fact disputes by a jury. Rather this case, unlike *Smith* and *Spagnola*, does not present a material fact dispute since Plaintiff cannot come forward with specific facts as to whether Mr. Roth intended to injure Plaintiff or whether he believed that any injury to Ms. Polanco was substantially certain to result from his acts or comments.[6]

## CONCLUSION

Accordingly, and for all of the foregoing reasons, Defendant's motion for summary judgment should be granted.

Dated this 24th day of September, 2012.

Respectfully,

/s/ Manuel J. Solano

Manuel J. Solano, Esq., #7646
*Attorney for Defendant*
12000 N. Washington St. Ste 310
Thornton, CO 80241
Email:solanolaw@earthlink.net
Phone: (303) 457-2000

---

[6] If the moving party meets its initial burden, the nonmoving party must then set forth, as provided in Fed R Civ P 56(c), specific facts showing that there is a genuine issue for trial. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) If the nonmovant fails to respond with specific facts showing a genuine issue for trial after adequate time for discovery, the court must grant the motion for summary judgment. *See* Fed R Civ P 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was served via the USPS, postage prepaid to the following address this 20th day of September, 2012.

Traylor Law Group
Whitney C. Traylor
1721 High St.
Denver CO 80218

**Original Hand Delivered on September 20, 2012 to:**
The Clerk of the United States Bankruptcy Court
For the District of Colorado
721 19th St.
Denver, CO 80202

_/s/ M.S._
12000 N. Washington St. Ste 310
Thornton, CO 80241