**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 11-34121 MER |
| JOSEPH ANTHONY ROTH, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| TASHEENA POLANCO | ) | Adversary No. 12-1010 MER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH ANTHONY ROTH, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

THIS MATTER comes before the Court on the parties' cross-motions for summary judgment and responses.  Plaintiff Tasheena Polanco ("Polanco") seeks a determination her state court judgment against Debtor-Defendant Joseph A. Roth ("Roth") is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).[1] Roth seeks the opposite finding, alleging he lacks the requisite intent under § 523(a)(6).

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 (a) and (b) and 157(a) and (b).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as it concerns a determination as to the dischargeability of a particular debt.

## BACKGROUND

The facts of this case arise from certain state court litigation in Adams County District Court styled *Polanco v. Roth*, Case No. 2010 CV 832 ("State Court Action").  On October 17, 2012, the Court found discretionary abstention

---

[1]  Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

appropriate, and held this proceeding in abeyance pending completion of the State Court Action.  Following a jury trial and complete adjudication in state court, the facts are largely undisputed.[2]  Most importantly, it is undisputed Roth engaged in the alleged conduct, and caused injury to Polanco resulting in damages.  The sole issue before this Court is whether Roth's conduct was willful and malicious, under § 523(a)(6).  The following facts are relevant to determining this issue.

Between May 12, 2009 and June 8, 2009, Polanco was employed at Roth Automotive, a business owned by Roth.  Roth does not dispute he made comments of a sexual nature to Polanco, made sexual gestures to her, and described his own sexual conduct to her.[3]  Further, Polanco's testimony in the

---

[2]  The parties raised no objection to any of the exhibits tendered in connection with the cross-motions for summary judgment, and the Court considered the exhibits for all purposes.

[3]  *See*, *e.g.*, the following testimony by Roth:

Q:    (by Mr. Traylor) You said at one point to Larry or one of your other coworkers that your replacement has nice boobs?

A:    (by Roth) Yeah.

Q:    She heard that?  Ms. Polanco heard that?

A:    She must have overheard it, yeah.

Transcript of State Court Trial, April 10, 2013, attached as Exhibit U to Roth's Reply to Plaintiff's Motion for Summary Judgment (Docket No. 63) p. 152, line 22 - p. 153, line 1.

Q:    (by Mr. Traylor) You can put the deposition transcript down now.  According to your sworn testimony, it could have been Alex or you making those sexual gestures around Ms. Polanco?

A:    (by Roth) Yes.

Q:    When you just said it wasn't you and you believed it was Alex even though you didn't see him, that wasn't true, was it?

A:    Right.

*Id.*, p. 155, lines 9 - 17.

Q:    (by Mr. Traylor) I'm going to read to you [from your previous deposition] starting from line 9.  My question was, "Did you tell Ms. Polanco that you and two employees paid a woman for sexual acts?  You paid for Larry to receive sex, including oral sex, because Larry is slow and doesn't ever get laid?"

State Court Trial indicated he touched her in a sexual manner.[4]  Roth also repeatedly asked Polanco to give him massages.  Typically, Polanco responded to Roth's advances by remaining silent and walking away.  However, Polanco verbally refused to give him massages.[5]

Roth described the day Polanco arrived with her mother to apply for the job:

> Q:    (By Mr. Traylor) Did you say anything at that time that you now feel was inappropriate?
>
> A:    (by Roth, reading) "Yes."
>
> Q:    Did I read that correctly?
>
> A:    Yes.
>
> Q:    Did you read your response correctly?
>
> A:    Yes.

*Id.*, p. 166, lines 6-15.

[4]  See Transcript of State Court Trial, April 10, 2013, attached to Polanco's Motion for Summary Judgment, (Docket No. 62), p.50, lines 7-16 (describing Roth licking glass in vicinity of Polanco's breasts when Polanco was cleaning the glass on the other side); p. 57, lines 11-20 (describing Roth groping Polanco's breast); and p. 60, lines 14-17 (describing Roth touching Polanco's crotch).

*See also*, 1) Verdict Form - Battery, attached as Exhibit N to Roth's Motion for Summary Judgment, (Docket No. 61), indicating Polanco proved by a preponderance of the evidence that Roth's act resulted in physical contact with Polanco, that Roth intended to make harmful or offensive physical conduct with Polanco or knew that he would probably make such contact, and that the contact was harmful or offensive to Polanco; and 2) Verdict Form - Colorado Anti-Discrimination Act - Hostile Work Environment Sexual Harassment and Verdict Form- Colorado Anti-Discrimination Act - Quid Pro Quo, attached at Exhibits Q and R to Roth's Motion for Summary Judgment, both of which indicate Polanco proved by a preponderance of the evidence that she was subjected to inappropriate sexual stories, imagery and innuendo in the workplace, references to her breasts and appearance, requests for massages, and/or touching in a sexual manner.

[5]  In addition, Roth's Reply (Docket No. 63) contains cites to his testimony in the State Court Action indicating Polanco did not affirmatively ask him to stop his behavior, nor did she ever contact the police.  Roth notes Polanco never told him his advances were unwelcome, but just looked away or walked away.  Further, Roth alleges during the time of her employment, he was unaware Polanco had been raped in the past.  However, Polanco's reaction to Roth's statements and conduct are not relevant to whether Roth acted with willful and malicious intent to cause injury.  Moreover, Polanco's testimony rebuts Roth's blanket assertion she never refused his advances and requests.

A:     (By Roth) Yeah.  She was wearing a low cut shirt and I said, "Oh, you have nice boobs."[6]

Thereafter, on Polanco's first day at work, Roth asked her personal questions, such as whether Polanco had a boyfriend or "liked to party."  Further, he offered her a beer and a line of coke.[7]  Polanco then testified as follows:

Q: (by Mr. Traylor) Okay.  How did you react when he offered beer and asked if you liked to party?

A: I was extremely shocked. I didn't expect that.  I didn't really know why he was offering me that.  It was uncomfortable and awkward.  It was weird. I was shocked.

Q: Did you ever accept any of these offers?

A: No.

Q: Did you tell him no.

A: Yes, I told him no.[8]

Roth conceded his treatment of Polanco was inappropriate for the workplace and was wrong, although he denied intending to harm Polanco.[9]  However, Roth admitted he did not respect Polanco, and believed she deserved to be treated the way he treated her.[10]  Roth indicated she dressed

---

[6]  Transcript of State Court Trial, April 8, 2013, attached as Exhibit U to Roth's Reply to Polanco's Motion for Summary Judgment (Docket No. 63), p. 138, line 24 - p. 139, line 2.

[7]  Transcript of State Court Trial, April 10, 2013, attached to Polanco's Motion for Summary Judgment, Docket No. 62), p. 40, lines 2-11.

[8]  *Id.*, lines 12-22.

[9]  *See* Transcript of State Court Trial, April 8, 2013, attached as Exhibit U to Roth's Reply to Polanco's Motion for Summary Judgment (Docket No. 63), p. 175, lines 7-12;  p. 179, lines 9-14.

[10]      Q:     (by Mr. Traylor) Sir, you don't respect Ms. Polanco.  You never have. You believe you [sic] deserved to be treated the way you treated her?

A:     (by Roth) Yes.

Transcript of State Court Trial, April 8, 2013, attached as Exhibit U to Roth's Reply to Polanco's Motion for Summary Judgment (Docket No. 63), p. 175, lines 13-16.

inappropriately and provocatively, and was terminated because she was unable to perform her job.[11]  When questioned about Polanco's history as a rape victim, Roth stated he believed she was at fault for the incidents.[12]

At the conclusion of trial, the jury returned verdicts for Polanco on all her claims in the State Court Action, including the following:  1) battery; 2) invasion of privacy; 3) violation of the Colorado Anti-Discrimination Act by creating a hostile work environment through sexual harassment; and 4) violation of the Colorado Anti-Discrimination Act by using Polanco's failure to submit to Roth's conduct as a motivating factor in terminating her employment (i.e., *quid pro quo*).[13]  The jury awarded Polanco $50,000 in damages on the battery claim and $25,000 in damages on the invasion of privacy claim.[14]  Further, the state court judge awarded Polanco $29,609.73 in prejudgment interest on the battery and invasion of privacy claims.[15]  Following a subsequent hearing on damages, the state court judge awarded Polanco $26,600 in back pay on the Colorado Anti-Discrimination Act claims,[16] and $2,235.17 in costs.[17]

## DISCUSSION

**A.   Summary Judgment Standards**

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

---

[11]  Transcript of State Court Trial, April 11, 2013, attached as Exhibit V to Roth's Reply to Polanco's Motion for Summary Judgment (Docket No. 63), p. 40, lines 11-23; p. 31, line 7 - p. 32, line 16.

[12]  Q:   (by Mr. Traylor)You actually believe–you just testified about Ms. Polanco's previous assaults.  You believe she was at fault for those?

   A:   (by Roth) Yes.

Transcript of State Court Trial, April 8, 2013, attached as Exhibit U to Roth's Reply to Polanco's Motion for Summary Judgment (Docket No. 63), p. 179, lines 5-8.

[13]  Polanco's Motion for Summary Judgment (Docket No. 62), Exhibit 5.

[14]  *Id.*

[15]  *Id.*, Exhibit 3.

[16]  *Id.*, Exhibit 6.

[17]  *Id.*, Exhibit 7.

matter of law."[18]  The burden for establishing entitlement to summary judgment rests on the movant.[19]  Summary judgment is not appropriate where a dispute exists as to facts which could affect the outcome of the suit under relevant law.[20]  A genuine dispute over a material fact exists when the "evidence supporting the claimed factual dispute [is] shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[21]  When reviewing motions for summary judgment, the Court must view the record in the light most favorable to the non-moving party.[22]  Based on the records, findings, and judgment of the State Court submitted by the parties, the Court finds no genuine issue of material fact remains to be determined by this Court. Therefore, this Court's task is to determine whether either party is entitled to judgment in that party's favor as a matter of law.

## B.    Positions of the Parties

Roth alleges Polanco cannot demonstrate his conduct was willful and malicious.  The jury instructions in the State Court Action form the basis of his argument.  It is undisputed the jury received instructions regarding battery, invasion of privacy, *quid pro quo* sexual harassment and hostile work environment sexual harassment.  However, Roth asserts Polanco failed to raise claims for extreme and outrageous conduct, emotional distress and punitive damages, nor did she submit a special interrogatory to the jury regarding willful and malicious injury.  Thus, Roth believes the intent element under § 523(a)(6) is not ripe for determination on summary judgment.

Specifically, Roth points to Jury Instruction 13, which states "[a] person intends to make harmful or offensive physical contact with someone else if he acts with the purpose of causing such contact if he did not intend to cause the specific harm that actually occurred."[23]  Although the jury found in favor of Polanco, Roth asserts there was no finding of subjective intent to willfully and maliciously injure Polanco, and the § 523(a)(6) claim must fail.  Roth asserts

---

[18] FED. R. CIV. P. 56, (as incorporated by FED. R. BANKR. P. 7056); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).

[19] *Celotex*, 477 U.S. at 323.

[20] *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-289 (1968)).

[22] *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988).

[23] Roth's Motion for Summary Judgment (Docket No. 61), Exhibit L.

collateral estoppel and *res judicata* preclude Polanco from raising those issues before this Court.

Roth also points to Jury Instruction 11 for Polanco's battery claim, indicating Polanco must show the Roth intended to make harmful OR offensive contact,[24] and argues the disjunctive instruction takes intent to harm out of the equation.  Similarly, with respect to the sexual harassment and *quid pro quo* claims, although the jury found for Polanco, Roth asserts their findings do not meet the willful and malicious standard because they are modified by Jury Instruction 13 that intent to make harmful or offensive contact is present even if Roth did not intend the specific harm to occur.[25]

Polanco, on the other hand, argues the questions answered by the jury and the jury's findings of sexual harassment, *quid pro quo*, invasion of privacy, and battery are sufficient to meet the willful and malicious standard of § 523(a)(6).

## C.    Collateral Estoppel

Under applicable Colorado law, collateral estoppel applies only if four conditions have been satisfied: 1) the issue sought to be precluded is identical to an issue actually and necessarily determined in a prior proceeding; 2) the party against whom estoppel is asserted was a party to or is in privity with a party to the prior proceeding; 3) there was a final judgment on the merits in the prior proceeding; and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.[26]  The burden of establishing these elements rests on the party asserting collateral estoppel.[27]

In this case, the issue of whether the acts complained of were committed was before the jury in the prior proceeding, and were actually and necessarily determined by the jury in reaching its decision.  The parties, Polanco and Roth, are identical to the parties in this proceeding.  A jury trial was held and concluded in the State Court Action, and there was a final judgment on the merits.  The final judgment in the State Court Action was not appealed.  Each

---

[24]  *Id.*, Exhibit H.

[25]  *Id.*, Exhibits K and J.

[26]  *In re Tonko*, 154 P.3d 397, 405 (Colo.2007); *see also Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84–85 (Colo.1999); *Michaelson v. Michaelson*, 884 P.2d 695, 700–701 (Colo.1994).

[27]  *Bebo Constr.*, 990 P.2d at 85.

party put on evidence and was afforded a full an fair opportunity to litigate the issues.  Accordingly, collateral estoppel applies to the factual record of this case, as set forth by the parties in the transcripts and other exhibits attached to their motions.  The remaining task for this Court is to determine whether those facts warrant a finding of nondischargeability under § 523(a)(6).

## D.   Polanco's Injuries

In order to determine whether Roth acted with the requisite intent to cause the resulting injuries to Polanco, a brief review of the injuries caused is instructive.

Polanco's unrebutted testimony at trial demonstrated she suffered mental and emotional injuries as a result of Roth's conduct.[28]  Specifically, she testified she suffered severe anxiety, stress, fear, humiliation, and embarrassment.[29]  Further, she is uncomfortable dealing with unfamiliar males.[30]  She has also experienced physical symptoms of the mental and emotional injuries in the form of sleep loss, nausea, and panic attacks.[31]

## E.   Willful and Malicious Injury Under § 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code provides:

> A discharge under . . . this title does not discharge an individual debtor from any debt-
>
> > (6)  for willful and malicious injury by the debtor to another entity or to the property of another entity.

The Tenth Circuit Bankruptcy Appellate Panel has stated the following regarding § 523(a)(6):

> Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  To state a claim for relief under § 523(a)(6), the creditor must include allegations that would support a reasonable

---

[28]  Transcript of State Court Trial, April 10, 2013, attached to Polanco's Motion for Summary Judgment, Docket No. 62), p. 62, line 4 - p.65, line 15

[29]  Id., p. 62, lines 16-23; p. 64, lines 6-8; p. 65, lines 10-15.

[30]  Id., p. 62, lines 16-23.

[31]  Id., p. 62, lines 19-20; p. 63, lines-5-16.

inference that the debtor caused a deliberate or intentional injury to the creditor.  Debts resulting from recklessness or negligence do not fall within § 523(a)(6).

. . .

[A]s the Supreme Court made clear in *Kawaauhau v. Geiger*, an intent to cause injury is required to bring a debt within § 523(a)(6).[32]

Specifically, the Supreme Court found for a debt to be nondischargeable under § 523(a)(6), a plaintiff must prove, "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[33]  Willfulness "may be established by direct evidence of specific intent to harm a creditor or the creditor's property.  Willful injury may also be established indirectly by evidence of both the debtor's knowledge of the creditor's . . . rights and the debtor's knowledge that the conduct will cause particularized injury."[34]  The requirement of maliciousness "is satisfied upon a showing the injury was inflicted without just cause or excuse."[35]

## F.    The Debt Owed to Polanco Resulted from Willful and Malicious Injury by Roth.

Polanco did not add a claim for emotional distress to her complaint in the state Court Action.   However, Roth's reliance on this fact is misplaced.  Polanco's claims for battery and invasion of privacy are intentional torts, and the jury concluded those torts occurred.  The presence of such intentional torts, as noted by Judge McNiff of the Bankruptcy Court for the District of Wyoming, may alone support a finding of willful and malicious injury under Colorado law.

In addressing assault and battery and interpreting a Colorado judgment, Judge McNiff found:

---

[32]  *Barenberg v Burton (In re Burton)*, 463 B.R. 142, *6 (10th Cir. BAP, Aug. 31, 2010) (unpublished decision) (citing  *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)).

[33]  *Kawaauhau*, 523 U.S. at 61-62.

[34]  *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999).  *See also Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) (willfulness may be shown where a debtor intends the injury or takes action substantially certain to cause the injury).

[35]  *Wagner v. Wagner (In re Wagner)*, 492 B.R. 43, 55 (Bankr. D. Colo. 2013) (citations omitted).

The court must conduct the same analysis to determine if the claim of civil assault is identical to willful and malicious injury. The intentional tort of assault requires that the act be done for the purpose of bringing about a harmful or offensive contact . . . to another or to a third person or with knowledge that such a result will, to a substantial certainty, be produced by his act." *White v. Muniz*, 999 P.2d 814 (Colo. 2000) citing Restatement (Second of Torts) § 18 cmt. e.(1965). Under § 523(a)(6) the "meaning of the term 'willful' modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. This definition represents a very narrow reading of 'willful' requiring a deliberate injury akin to that needed to establish an **intentional tort**." The elements of willful and malicious injury are identical as the elements to establish an intentional tort of assault. The Colorado court entered its judgment and order against the Defendant on the tort of assault, based upon the Defendant's deemed admission that he assaulted the Plaintiff. This bankruptcy court finds that as the elements are identical, the issue was actually litigated.[36]

In *White*, the Colorado Supreme Court had stated:

> Historically, the intentional tort of battery required a subjective desire on the part of the tortfeasor to inflict a harmful or offensive contact on another. See Restatement, *supra*, § 8A; Keeton, *supra*, § 8; 6 Am.Jur.2d Assault and Battery § 8 (1999). Thus, it was not enough that a person intentionally contacted another resulting in a harmful or offensive contact. *See* Restatement, *supra*, § 18 cmt. e; Keeton § 8. Instead, the actor had to understand that his contact would be harmful or offensive. See Keeton, *supra*, § 8; Dobbs, supra, § 29. The actor need not have intended, however, the harm that actually resulted from his action. See Restatement, *supra*, § 16(1). Thus, if a slight punch to the victim resulted in traumatic injuries, the actor would be liable for all the damages resulting from the battery even if he only intended to knock the wind out of the victim. *See id.*[37]

---

[36] *Farrell v. Hopkins (In re Hopkins)*, 2012 WL 646059, at *4 (Bankr. D. Wyo. 2012) (Slip Copy) (emphasis added).

[37] *White*, at 816-17.

In addition, courts have concluded a finding of "sexual harassment" under laws similar to the Colorado Anti-Discrimination Act supports a finding of "willful and malicious" under § 523(a)(6).  For example, addressing Massachusetts law, the Bankruptcy Appellate Panel for the First Circuit found:

> Although there is no malice requirement in the sexual harassment statute, malice is inherent in finding that the Appellant was liable for sexual harassment.  The Appellant unjustifiably disregarded the Appellee's right to be free from sexual harassment by engaging in behavior that created an abusive working environment.  The MCAD determined that the Appellee made a "credible case for sexual harassment" testifying "as to frequent, substantial sexual comments about her, concerning her dress and breasts, as well as inappropriate staring, rubbing, and touching by [the Appellant]."  App. at 16.  Additionally, the MCAD found that the Appellant's "sexual comments, staring, and touching humiliated the Appellee and her discomfort was corroborated by others present in the office."  *Id.* at 16.  This Panel concludes that a finding of sexual harassment constitutes the requisite injury and is equivalent to a finding of malicious and willful injury for dischargeability purposes under § 523(a)(6).[38]

Further, the Bankruptcy Court for the Southern District of New York was "persuaded by the many bankruptcy courts that have found that sexual harassment discrimination is inherently an intentional tort and allowed it to be excepted from discharge as a willful and malicious injury."[39]

Roth improperly relies on *Sanger v. Busch (In re Busch)*, 311 B.R. 657, 669 (Bankr. N.D.N.Y. 2004) for the proposition that a state court finding of sexual harassment and creation of a hostile work environment did not satisfy the willfulness prong of § 523(a)(6).  The same court which issued *Busch* in 2004 has reconsidered the issue, and subsequently adopted the "substantial certainty" test, rather than continuing to rely on the "actual intent" test it used in *Busch*.[40]  Moreover, the Tenth Circuit adopted the "substantial certainty" test in 2004.[41]

---

[38]  *Jones v Svreck (In re Jones)*, 300 B.R. 133, 140-41 (1st Cir. BAP 2003).

[39]  *Basile v Spagnola (In re Spagnola)*, 473 B.R. 518 (Bankr. S.D.N.Y. 2012) (citations omitted).

[40]  *Alvarez v. Chaffee (In re Chaffee)*, Slip Copy, 2013 WL 4716320, at *6 n.5 (Bankr. N.D.N.Y. Sept. 3, 2013) (Slip Copy).

[41]  *See  Moore*, 357 F.3d at 1129 (noting maliciousness requires a plaintiff to prove a debtor intended the resulting injury or intentionally took action substantially certain to cause

Here, the willfulness of Roth's actions is shown by the fact he intended to commit the acts of battery, invasion of privacy, creation of a hostile work environment, and *quid pro quo* termination.  As an employer, Roth knew his employees had a right not to be subjected to such lewd conduct.  Polanco never saw Roth touch the male employee in the office in a sexual manner.[42]  In addition, Roth admitted the sexual comments he made to Polanco were wrong and inappropriate in a workplace.[43]  The state court record also shows Roth intended Polanco to suffer the injuries described above, or at a minimum, knew the injuries were substantially certain to occur.  Roth understood his actions were harmful or offensive, and substantially likely to cause injury, yet he continued such conduct despite Polanco's refusal to accept his advances and requests for massages, and despite her attempts to ignore him or walk away.  Thus, the Court concludes the emotional and mental injuries suffered by Polanco were substantially certain to occur.

As to maliciousness, the Court agrees with the United States Court of Appeals for the Second Circuit that "malicious" means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will," and malice may be implied "by the acts and conduct of the debtor in the context of [the] surrounding circumstances."[44]  Here, the state court record amply supports a finding Roth acted without just cause or excuse, engaging in conduct that was inappropriate, crude, and disgusting.  Moreover, the jury determined he committed battery, invasion of privacy, creation of a hostile work environment, and retaliation.  None of the testimony cited by Roth shows the slightest justification for such acts.  A review of the jury instructions and the jury findings indicates the jury did not believe Roth's assertions that the acts were playful banter and somehow "invited."

Lastly, Jury Instruction 13, which Roth asserts prevents this Court from finding both willfulness and malice in his intentional torts of battery and invasion of privacy and in his creation of a hostile work environment and retaliatory actions, is really just a statement of the common law rule that one takes his

---

the injury).

[42]   Transcript of State Court Trial, April 10, 2013, attached to Polanco's Motion for Summary Judgment, Docket No. 62), p. 62, lines 1-3.

[43]   Transcript of State Court Trial, April 8, 2013, attached as Exhibit U to Roth's Reply to Polanco's Motion for Summary Judgment (Docket No. 63)p. 165, lines 11-18 and p. 175, lines 7-12.

[44]   *Ball v. A.O. Smith Corp. (In re Ball)*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Navistar Financial Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87-88 (2d Cir. 1996) (internal quotation marks omitted).

plaintiff as he finds him.  In other words, even though Roth may not have known of Polanco's earlier sexual assaults, he is nonetheless liable for all the injuries caused by his own actions, whether or not Polanco's history made them more severe.

## CONCLUSION

For the above reasons,

IT IS ORDERED Polanco's Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED Roth's Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED Roth's debt to Polanco from the State Court Action in the amount of $133,444.90, plus interest from the date of the State Court judgment at eight percent per annum pursuant to COLO. REV. STAT. § 5-12-102, is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

Dated February 21, 2014                    BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge